Good morning, Counsel. Good morning, Your Honors. My name is Christopher Rudd. I represent the appellant in this action, Elsa Polo. I'd like to reserve three minutes for rebuttal. Keep your eye on the clock. We'll try to help you. Thank you. Your Honor, I drafted and briefed this matter as though it were an issue involving the wrongful dismissal of the second claim for relief in the Third Amendment complaint, that is, the plaintiff's CLRA claim. Then it struck me it's odd. The defendant in this matter had said that the plaintiff had Article III standing when it removed Pursuant to CAFA and argued there was no Article III standing when it sought summary judgment. And while I was hoping to entice the court into discussions over Bellevue-McCulloch and that sort of thing, it turned out. I'm sure I understand. You want to argue something different than what your brief said? No, Your Honor. I wish to argue in a slightly different order. There was never Article III standing in this case. And it's shown by the papers here. If you look at it. Because she got the refund before she filed the litigation, right? Yes. She got the refund before she. This was a wrongful removal issue, not a wrongful dismissal. Are you reverting to standing under California law? That is correct, under Meyer v. Sprint and the CLRA. And she suffered damage? Yes, she did. She bought the product. She relied upon it. I believe she states at great length in our reply brief about three pages worth of her reliance, which distinguishes her from the punitive plaintiffs in the Meyer case. So under Meyer, you can't pick off a class plaintiff, even if they've been compensated. They're still standing under the state statute. Yes, Your Honor. That is absolutely correct. And we had addressed this as though the court in looking. We can look at this. You can see in excerpt 8, paragraph 1, the court held that Article III jurisdiction was absent because plaintiff had received a full refund. I can read that bit. However, the plaintiff had received it before the case was filed. She received it on May 11, 2012. That's on excerpt of record 6. Did you object at that point because the plaintiff had no standing? Did I object? No, we did not object. And the reason we did not object, Your Honor, as the record shows, is that there was some time delay. Our client is a septuagenarian lady whose first language is Spanish. The bank at which she received the refund, she closed the account. There was some time delay. OK, so if I understand you correctly, you're saying that you want us to adjudicate this case based upon the fact that because your client received a refund before the case was removed, there was no standing. And basically, we ought not to be considering this case at all. You don't want us to consider the fact that she didn't have diabetes, that she didn't stop taking the medicine five months before, and all that sort of thing. You don't want us to consider any of that. Your Honor, none of that's relevant to her CLRI claim. All of that deals with, under her CLRI claim, she bought a worthless quack product. Whether she had personal injury, suffered from it or not, she suffered economic injury when she bought a product that was worthless and she took it. And she became ill. The issue, the sole issue before this court, irrespective of any efforts to elide it, is whether or not the court properly dismissed that claim rather than remanding it to the state court. It occurred this morning that, of course, there was never Article III jurisdiction. Therefore, it shouldn't have been in the- Have you waived that, or can you waive a jurisdictional argument? You cannot waive a jurisdictional argument. Article III is, of course, trumps everything. You like that word, too. I'm afraid this is the beginning of a long season of Trump jokes. So why don't we just stipulate it's a verd- Fair enough. For purposes of the Ninth Circuit. Fair enough. Your Honor, I would point out that, were this a wrongful dismissal as opposed to a wrongful removal issue, we would note that the court made no finding with respect to the futility of remand to the state court. And as, of course, I just mentioned, state court jurisdiction would continue to exist under Meyer v. Sprint. The court only found that in Exeter Record 8 that there was no Article III jurisdiction. At minimum, Your Honor, this matter needs to be, well, I would argue it can't be, it needs to be remanded to the United States District Court for proceeding with respect to futility. But the appropriate ruling here would be a remand to the United States District Court with an order that it be remanded to state court for further proceedings. Thank you, Your Honor. I think you still have 42 seconds left. What was the damage under Meyer v. Sprint? She bought the product. She paid for it. She spent the time and effort demanding it. You said she got the money back. You said she got the money back. Eventually. She spent the time and effort contacting a lawyer. The law in California is very clear, as set forth in our reply brief, that damage under the CRA need not be merely pecuniary. You can suffer damage on any number of bases. She mentions on page 13 of our reply why she purchased it, how she got sick. I'm sorry. That's my timer. And I believe, I'll save the rest for another time. Okay, very good. Very well. Let's hear from Interventions International. Good morning, Your Honors, and may it please the court. Thomas Pyshup on behalf of Interventions International, LLC, and I'm joined by my colleague, Michael Adler. I'd like to briefly touch on some of the procedural points, some of the essential procedural facts. Are you sure you addressed what counsel just said? Correct, Your Honor. Because it sounds like he's right. Correct, Your Honor. But let me simply go over the procedural history, the essential procedural facts of this case. It was originally filed in state court in 2012. This case has gone for four years now. And it was removed to federal court under CAFA. There was no dispute whatsoever as to the propriety of that removal. And once that case was removed, the district court had original jurisdiction. And in fact, Ms. Polo asserted Article III jurisdiction once it was removed. She brought a First Amendment complaint, bringing a federal claim. She asserted that there was a national jurisdiction. She didn't remove it, though. That's correct. She did not remove it. But she did, in fact, once the case was removed, she brought a First Amendment complaint within days of removal, asserting that there was a federal jurisdiction. There was Article III jurisdiction. Had she received her money back at that point? She received her money back prior to the initial lawsuit being brought in state court. OK. Yes. In fact, she and that Article III injury, in fact, that she alleged was based on physical harm that she alleged she suffered. The claims were that she was in federal court. So presumably, she would amend to assert federal claims to the extent she was in federal court. She asserted federal claims, Your Honor. She did not seek remand. She asserted her federal claims. And she asserted that she had suffered federal harm and had Article III injury, in fact. Right. So the counsel freely admitted that they didn't raise the issue until now or recognize the issue. But it is jurisdictional. So is it waived? Is that what you're suggesting? Your Honor, it was. What does your co-counsel suggest? Yeah. The matter was adjudicated. The matter was adjudicated. It went to judgment. It was fully adjudicated. It was adjudicated. And judgment was entered by the court. And I'd like to refer the court. My question is, is jurisdiction waived? Your Honor, jurisdiction is not. Jurisdiction was not. I'm not clear. There was the court maintained jurisdiction.  It's a can raise at any time. Correct, Your Honor. OK, so what's wrong with raising it now? Your Honor, the court had Article III jurisdiction. And it was adjudicated by the court pursuant to the court's original jurisdiction. She didn't have Article III jurisdiction based on the fact that she had no damage. Correct, Your Honor. She had neither Article III jurisdiction. She did not have Article III jurisdiction because as the order she didn't seek federal jurisdiction. You did. Correct. Correct, Your Honor. However, she did assert that she had Article III jurisdiction throughout the proceeding. That's evading my question. If the rule is you can't waive jurisdiction, it can be raised at any time. The fact that whatever she did, once you got her into federal court, doesn't waive it. In other words, if we had spotted it on appeal without anybody raising it, we would have to say, you know, under Article III standards, the federal district court didn't have jurisdiction because it wasn't a federal question. Correct, Your Honor. Ms. Polo asserted from the get-go and throughout the course of the proceedings that she had suffered physical harm such to give rise to Article III standing. Now, let me explore that because, of course, my colleague is correct about the Article III standing. But if I understood the opposing counsel, he said that she didn't have to suffer pecuniary damage. She could suffer other types of damage. I gather you're saying, yeah, he's right. That's what she alleged. She had that from the get-go. That never changed. So there was Article III standing because she had, in fact, suffered damages, non-pecuniary damages. Correct, Your Honor. So there was jurisdiction because there was Lujan damages. Correct. There continued to be jurisdiction. Correct, Your Honor. And the district court had its ability to move forward. Is that right? Correct, Your Honor. And in fact, the refund is simply not particularly relevant in this case. If we look at the order and we look at the record, page 7, the judge found that the plaintiff's allegations that she suffers from diabetes and stopped taking prescription diabetes medicine and instead took D-abstevia as a substitute R together, the factual predicate of each and every one of plaintiff's claims. That includes the CLRA claim. And the judge further found that on Ms. Polo's own admissions under oath, she did not have diabetes and was never taking, certainly in five months prior to seeing the advertisement, was not taking a prescription medication. That was a harm. I get all of that. I guess I want to get back to the standing point, though. Correct. We have all of this. It admits all that to the judge. The point is, from a jurisdictional perspective, at the time the case was removed, the fact that she'd been paid the money back doesn't matter. Correct. Because she claimed that she'd suffered non-pecuniary damage. Correct. She continued to make that assertion throughout the litigation. Correct. When the district judge found that she didn't, major aspects of the complaint were false, and so no causation could be shown, he then dismissed the state action. Correct. So that doesn't go, though, does it, to the jurisdictional issue? Because she claimed to have non-pecuniary damages, indeed, the obligation to go see a lawyer, et cetera, et cetera, all these other things that she allegedly suffered. That was enough, right? Correct, Your Honor. And I would note that it was fully adjudicated that judgment was entered on those facts. And even under Meyer, there is a requirement under the CLRA that there be harm and causality, both of which the court established did not exist in this particular case. Well, causality is the main thing here, right? Correct. In the state court. In the Meyer case, it's the district court to decide that under the Meyer standard of damage, Kagan, actually. Did not specifically address that. It was in Kigta, Your Honor. Why should it have simply found a failure to establish Article III standing and remanded back to the state court so she could prove, for purposes of state damage measure, that she had standing, particularly under Meyer, where she would not be able to negate damage? She'd still have standing under the Meyer concept. Well, Your Honor, I think that we're, although the decision is phrased in terms of standing, it's really a case in which the defendant could not prove a case. Yeah, but that's what I'm not understanding, because under the California law, which he dismissed as on the merits, if this were in state court, it would not have been dismissed under Meyer and Kagan, right? No, that's not the case, Your Honor, because there's no harm or causality that could be established. And that is exactly what the district court found. They don't qualify under Meyer, but she doesn't because she didn't have any damage. Correct, Your Honor. She didn't have diabetes. She'd misrepresented the fact that she had diabetes, but she alleged that she had diabetes when she did not have it. And she alleged that she stopped taking prescription medication. That kicks out the causality linchpin, as the district court found. And the Meyer case is on all fours with this particular case, because in the Meyer case, the plaintiffs complained about an arbitration agreement. And as the California Supreme Court found, that arbitration agreement was never enforced against them, so they did not have standing under the CLRA. And there were no transactional damages. Correct, Your Honor. Did the district court address the question of whether there were transactional damages in this case? No, Your Honor. It would be foreclosed under the lack of causality and the lack of damages. Again, and I would also, I think I should mention that if this case were to be remanded. That's what I don't understand. Her theory is that she went ahead and bought a misrepresented product. Correct. Okay, it was a phony product from her allegations. She bought it. She detrimentally relied by parting with money. And she sued for that misrepresentation on her own behalf and on behalf of a class. So are you saying that there was, under that theory, there's a causal connection because she didn't, in fact, have diabetes? Correct, she engaged in a commercial transaction. Naked commercial transaction in and of itself is not going to give rise to standing. There can be no damage and no causal relationship in this particular context. She bought, she claims to have bought the product because she suffered from diabetes and she needed a substitute for a prescription medication, which she was not taking. Well, she thought she had diabetes. Isn't that what she alleged? She may have alleged that, but in her sworn statement, it was very clear that she was very clear in not having diabetes. So why did she buy the medication? I can't answer that question. I can't answer that any sort of reliance would not necessarily be, would not be reasonable. I should also mention under CAFA, even if this case were to be remanded to state court, CAFA would still apply. We're still in a context in which we have diversity of jurisdiction. We have in excess of 100 defendants and we have in excess of $5 million reasonably alleged. So we're talking about the ping pong game that the United Paper and Steele case talk discusses.  No. Very well. We have some rebuttal time, counsel. Thank you. Thank you, Your Honor. During the limited time I had, I searched in vain for any discussion by the district court of Meyer v. Sprint or standing under California statute. It doesn't exist. It wasn't part of the lower court record. And in fact. Is the district court required to mention Meyer versus Sprint? No, but the district court should have done one of two things. It should have made a finding of futility or it should have remanded to the superior court for the superior court to determine whether under the relaxed standards for standing under the CLRA in California, the plaintiff had standing. And by the way. Could we remand this to the district court to make such a finding? A finding of futility? The court may do as it sees appropriate. Of course. But I'm just saying, what's the difference? Why in the world? Why in the world would that be necessary? I believe it's conceded that the plaintiff had transactional costs here. She purchased this product as opposed to using her money for something else. Maybe she got a refund. But she also had to hire a lawyer. She, let's see, in her brief, she was, and that in itself constitutes sufficient injury to confer standard under the CLRA. She'd be in. So basically it also confers federal jurisdiction, right? I would argue that no, it doesn't. I think that the clear, clearly they didn't have federal jurisdiction when they removed her. Well, how can that be? She had done all those things that you just talked about. She had to find a lawyer. She did these other expenses other than on a non-pecuniary basis. All I can say is I can quote from the excerpt of record eight, where the court states, notably plaintiff's plea for restitution is moot because it is undisputed that plaintiff already refunded plaintiff her entire purchase price, including tax and shipping. Plaintiff asserts that the refund does not strip her of standing to pursue her CLRA claims, because California courts have recognized a relaxed standing requirement. They never got into the relaxed standing requirement. And of course under, we shouldn't be arguing whether or not she has California state jurisdiction under the CLRA for the first time here. The court made no such finding. If the court wishes, it may remand this to the district court for some sort of finding, but a finding of futility is simply impossible under these circumstances, given the state of California's CLRA law. Thank you. Thanks to all the counsel for the argument. The case is argued as submitted, and the court stands in recess for the day. All rise.
judges: Fisher, M. Smith, Nguyen